UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH VAN VELZOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:12-CV-2508-G |
| CITY OF BURLESON, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) ("Motion") (docket entry 25).  For the reasons stated below, the motion is granted.

I.  BACKGROUND

This is a disability discrimination case arising from alleged discriminatory practices of the City of Burleson, Texas (the "defendant"), including refusing requests to accommodate disabilities and maintaining a practice of not enforcing statutes intended to protect disabled individuals.  Second Amended Complaint ("Complaint") at 1 (docket entry 23).

Joseph Van Velzor (the "plaintiff") is a resident of Burleson, Texas, who has a degenerative bone and joint disorder which substantially limits his mobility. *Id*. ¶¶ 1, 5. He has been issued accessible parking placards and license plates for his motor vehicle by the Texas Department of Motor Vehicles. *Id.* ¶ 6. In October 2011, the plaintiff visited the Wal-Mart Supercenter store at 951 Southwest Wilshire Boulevard in Burleson ("Wal-Mart") and found no open parking spots reserved for those with disabilities ("accessible parking spots"). *Id*. ¶ 8. Furthermore, some of the accessible parking spots were occupied by vehicles without the proper placard or license plates, as required by the Texas Transportation Code § 681.011(b). *Id*. After contacting the Burleson Police Department ("police department") and requesting enforcement of the Transportation Code, the plaintiff was assured that an officer would be sent; however, no officer arrived. *Id*. ¶ 9.

Around March 2012, the plaintiff attempted to contact the police department due to similar circumstances at Wal-Mart and was met with a similar result. *Id*. ¶¶ 10-11. The plaintiff alleges that similar events have transpired on other occasions as well. *Id*. ¶ 12. The plaintiff has had conversations with a manager at Wal-Mart and was informed that, even at the request of store employees, the police department has failed to respond to similar complaints. *Id*.

Around March 23, 2012, the plaintiff went to the Burleson Stop gas station at 700 Southwest Wilshire Boulevard in Burleson ("gas station") where the store clerk

originally refused to assist him in pumping fuel, in violation of the Texas Business & Commercial Code § 105.003(a). *Id*. ¶ 16. After "some discussion," the clerk agreed to assist the plaintiff. *Id*. ¶ 16-17. However, after approximately 45 minutes, a separate, unidentified individual, who may or may not have been employed at the gas station, assisted the plaintiff. *Id*.

After this incident, the plaintiff contacted the police department to report the violation. *Id*. ¶ 18. An official for the police department informed the plaintiff that no laws had been violated and that no action would be taken. *Id*. ¶ 19. Later, the plaintiff traveled to the Burleson Police Station in order to discuss the enforcement of accessible parking and refueling ordinances. *Id*. ¶ 22. Officer Davis, who spoke with the plaintiff at the police department, informed the plaintiff that the enforcement of any possible violation committed by the gas station was outside of the police department's jurisdiction. *Id.* ¶¶ 22-23. The police department filed incident report 2012016424 in connection to the complaints of the plaintiff, but failed to make any further communications concerning the report. *Id*. ¶ 25.

Following this, the plaintiff traveled to the Burleson City Hall in an attempt to speak with the city's ADA coordinator in connection to the aforementioned events. *Id*. ¶¶ 26-27. The plaintiff eventually spoke with the Deputy City Manager, Paul Cain ("Cain"). *Id*. At a later date, the plaintiff once again spoke to Cain and was informed that the City of Burleson does not train its officers to respond to violations

involving the refueling ordinances. *Id*. ¶ 29. During these conversations, the plaintiff requested and offered alternative methods of enforcement regarding the accessible parking spots. *Id*. ¶ 28.

On July 25, 2012, the plaintiff filed this lawsuit. *See generally* Plaintiff's Complaint (docket entry 1). On October 3, 2012, the plaintiff filed a second amended complaint, bringing claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Complaint ¶ 31. On October 9, 2012, the defendant filed the instant motion. *See* Motion at 1.

## II.  ANALYSIS

### A.  Rule 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 396 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 1949. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'shown]' -- 'that the pleader is entitled to relief.'" *Id.* at 1950 (*quoting* FED. R. CIV. P. 8(a)(2)). The

court, drawing on its judicial experience and common sense, must undertake the

"context-specific task" of determining whether the plaintiff's allegations "nudge" his

claims against the defendant "across the line from conceivable to plausible."  See *id.*

at 1950, 52.

B.  Applicable Law

Congress enacted the ADA in order "to provide a clear and comprehensive

national mandate for the elimination of discrimination against individuals with

disabilities."  42 U.S.C. § 12101(b)(1).  The ADA targets disability discrimination in

employment (Title I), in public services (Title II), and in public accommodations and

services operated by private entities (Title III).  See *Olmstead v. L.C.*, 527 U.S. 581,

589 (1999).

Title II mandates that "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by

any such entity."  42 U.S.C. § 12132.  Public entities include "[a]ny State or local

government" and "[a]ny department, agency, special purpose district, or other

instrumentality of a State or States or local government."  28 C.F.R. § 35.104; 42

U.S.C. § 12131(1).  A "qualified individual with a disability" is

> an individual with a disability who, with or without
> reasonable modifications to rules, policies, or practices, the
> removal of architectural, communication, or transportation
> barriers, or the provision of auxiliary aids and services,

> meets the essential eligibility requirements for the receipt
> of services or the participation in programs or activities
> provided by a public entity.

42 U.S.C. § 12131(2).

Title II also delegates to the Attorney General the authority to "promulgate regulations in an accessible format that implement this part." 42 U.S.C. § 12134(a). Consistent with this delegation, the Attorney General has promulgated the following regulation relevant to this action: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

The plaintiff in this case raises two separate causes of action under Title II of the ADA and the Rehabilitation Act: (1) failure to make reasonable accommodations for disabled individuals by refusing to alter the city's enforcement plan in relation to accessible parking spots ("first cause of action"); and (2) a failure to provide equal programs and services to people with disabilities ("second cause of action"). Complaint ¶¶ 39, 44-45.

With respect to the first cause of action, the plaintiff's requested modification must be such as would prevent the exclusion of disabled persons from "participation in or . . . [denial of] the benefits of the services, programs, or activities of a public

entity." 42 U.S.C. § 12132.  In other words, as the regulations make clear, a public entity is required to make only those reasonable modifications that are "necessary to avoid discrimination on the basis of disability."  28 C.F.R. § 35.130(b)(7).  Where modifications are necessary to avoid discrimination, the ADA and Rehabilitation Act "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals.  Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant." *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005), *cert. denied*, 547 U.S. 1098 (2006).  If the court finds that an accommodation is required to prevent discrimination, the court must then determine whether the accommodation requested by the plaintiff is "reasonable," *i.e.*, whether the accommodation would require a "fundamental alteration in the nature of the program."  *Id*. at 455 n.12.

With regard to the plaintiff's second cause of action, there are three elements of a *prima facie* case of discrimination under Title II of the ADA:

> 1) [the plaintiff] is a qualified individual within the meaning of the ADA; 2) [the plaintiff] is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and 3) such exclusion, denial of benefits, or discrimination is because of [the plaintiff's] disability.

*Greer v. Richardson Independent School District*, 752 F.Supp. 2d 746, 753 (N.D. Tex. 2010) (Lynn, J.), *aff'd*, 472 Fed. Appx. 287 (5th Cir. 2012).

The jurisprudence of Title II of the ADA generally applies to the Rehabilitation Act also.  See *Pace v. Bogalusa City School Board*, 403 F.3d 272, 287-88 (5th Cir.) (en banc) (citing *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir.), *cert. denied*, 531 U.S. 959 (2000), and *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)), *cert. denied*, 546 U.S. 933 (2005).  The elements of a *prima facie* case of general disability discrimination under the ADA are, other than a heightened causation requirement, the same as the elements of a *prima facie* case under the Rehabilitation Act.  See *Bennett-Nelson*, 431 F.3d at 454.  In order to meet the causation requirement of a cause of action under the Rehabilitation Act, the plaintiff must show that the discriminatory act alleged was performed "solely by reason of her or his disability." *Id*.; *see* 29 U.S.C. § 794(a).

## C.  Application

### 1  *The First Cause of Action*

The plaintiff alleges that, by refusing to consider his requests for accommodation, that is, refusing to enforce or change policies which will increase likelihood of enforcement of parking regulations intended to protect disabled individuals, the defendant has violated the ADA and the Rehabilitation Act. Complaint ¶ 39.  More specifically, he contends that the city has ignored his requests to "accommodate his disability assisting [*sic*] in gaining access to designated disability parking spaces." *Id*.

- 9 -

In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege that he required a reasonable accommodation, or modification, in order to access a public program or service.  See, *e.g.*, *Johnson v. Gambrinus Company/Spoetzl Brewery*, 116 F.3d 1052, 1059-60 (5th Cir. 1997); *Bennett-Nelson*, 431 F.3d at 454.  In addition, it must be clear from the face of the complaint that the plaintiff's inability to access the public service in question would constitute discrimination in violation of the ADA. *See* 42 U.S.C. § 12131(2); 28 C.F.R. § 35.130(b)(7).

The plaintiff argues that his inability to access police enforcement of one Texas Transportation Code and one Texas Business & Commercial Code provision constitutes discrimination that calls for a "reasonable accommodation," *i.e.*, the modification of police department policies and practices.  *See* Plaintiff's Response to Defendant City of Burleson's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Response") at 3, 5 (docket entry 28).

The defendant maintains that because there are no statutes which "mandate[] that the City of Burleson must take any particular type of enforcement action," Motion at 7, the defendant has no obligation to reply to the plaintiff's request to enforce Tex. Transp. Code § 681.001.  However, this argument misses the mark. Regardless of other statutory mandates, when an accommodation is reasonable and would be required to prevent discrimination against disabled persons, the ADA

imposes an affirmative obligation on a public entity to make the accommodation.

See *Bennett-Nelson*, 431 F.3d at 454.

The defendant also argues that the chosen method of enforcement of any given statute is within an agency's "absolute discretion," Motion at 10 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)), particularly in cases where an agency did not exercise "*coercive power* over an individual's liberty." Motion at 11 (emphasis in original). In cases where non-enforcement by an agency does not infringe upon the liberty or property of an individual, the defendant insists, there should be no judicial review of the agency's action. *Id*. The defendant urges that even statutes with mandatory language, such as the statute at issue in *Town of Castlerock, Colorado v. Gonzales*, leave enforcement to the discretion of the police department. 545 U.S. 748, 760 (2005) (observing that "[a] well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes"). Motion at 11.

This argument is also misplaced, however, because there may be instances in which a police department's enforcement choices are egregious enough to warrant a conclusion that the ADA has been violated. Thus the defendant's reasoning ducks the initial question whether discrimination has occurred that requires accommodation. *See* 28 C.F.R. 35.130(b)(7). The police department's enforcement discretion may be overridden, so long as the plaintiff (1) is unable to access the public service at issue without a "reasonable modification," and (2) such inability to access

the public service constitutes discrimination.  42 U.S.C. § 12131(2); 42 U.S.C.

§ 12132; 28 C.F.R. § 35.130(b)(7).

Neither the plaintiff nor the defendant adequately comes to grip with a core

allegation a plaintiff must make to survive a motion to dismiss a Title II claim for

reasonable modification.  This failure is likely due to the fact that, in the general run

of cases, the most essential element is obvious on the face of a plaintiff's pleading.  A

core element of a claim for reasonable modification, whether under Title I, II, or III,

is that the plaintiff has been denied *meaningful access* to public places, benefits, or

services, *i.e.*, the kind of access that would be "necessary to avoid discrimination on

the basis of disability."  28 C.F.R. § 35.130(b)(7); see also *Alexander v. Choate*, 469

U.S. 287, 301 (1985) (holding that the Rehabilitation Act, in context of a reasonable

accommodation claim, "requires that an otherwise qualified handicapped individual

must be provided with meaningful access to the benefit that the grantee offers").

In this case, the plaintiff has not, in his complaint, provided the court with

sufficient factual allegations to conclude that he was denied meaningful access to the

"service" or "benefit that the grantee offers," *i.e.*, police enforcement of laws,

considered generally (not just police enforcement of traffic laws).  Though the

plaintiff attempts to restrict the universe of the enforcement "benefit" offered by the

police department to "traffic and parking laws,"[1] *see* Response at 5 and Complaint

---

[1]        Even if the court accepted the plaintiff's argument that the relevant

(continued...)

¶ 41, the court is of the opinion that such a restriction of the concept of the "service" or "benefit" offered by the police department is not appropriate in this case.  See *Alexander*, 469 U.S. at 303 (analyzing the benefit provided by Medicaid to disabled individuals as a "package of health care services").  Assuming without deciding that "law enforcement" falls within the statutory concept of "services," that benefit is neither divisible, nor discrete, in the manner that many other benefits, programs, or facilities offered by public entities are divisible, or discrete.  See *Heckler*, 470 U.S. at 831 (discussing the unique nature of decisions not to enforce).

Moreover, to conclude solely on the basis of non-enforcement of two statutory provisions that the Burleson police have denied the plaintiff "meaningful access" to law enforcement services would be to substitute this court's judgment for the

---

[1](...continued)

"benefit" here is the more narrow "enforcement of traffic and parking laws," the court would still find that the plaintiff has not alleged a plausible Title II claim for a reasonable modification.  This is because, while the plaintiff makes the conclusory allegation that the Burleson police department "enforces many other traffic and parking laws, but not those related to parking for people with disabilities," Response at 5, the plaintiff still only alleges that the police have failed to enforce two statutes.  Such failure does not plausibly lead to the conclusion that the plaintiff has been denied meaningful access to the Burleson police department's enforcement of all traffic and parking laws.  It cannot be doubted that the Burleson police enforce laws against speeding, against failure to make proper stops at intersections, etc.  Nor can it be doubted that the plaintiff benefits, along with non-disabled persons, from such enforcement.  Thus, the plaintiff has not alleged a plausible claim that he was denied meaningful access to the Burleson police department's enforcement of traffic and parking laws.

department's concerning what constitutes wise enforcement.  The court finds that *Heckler*'s reasoning counsels against such a course.  *Id.*

The court wishes to clarify that it is not concluding that a qualified individual with a disability could never make a proper "reasonable modification" claim with respect to police enforcement.  There may be instances where the lack of meaningful access to police services is so extreme that a court could find a reasonable modification necessary to prevent discrimination.  For example, if a police department systematically refused to respond to calls for service at an institution populated with disabled individuals, then a court might be able to find that a reasonable modification to department practice or policy would be required to prevent discrimination.  But here, the non-enforcement of two statutory provisions does not rise to this level, and a conclusion from this court that modification is required to provide greater access to police enforcement would intrude too greatly on the department's enforcement discretion.

Therefore, the court concludes that the plaintiff's allegations of lack of enforcement of one provision of the Texas Transportation Code and one provision of the Texas Business & Commercial Code do not support an inference that the plaintiff has been denied "meaningful access" to police enforcement of all the laws under the Burleson police department's jurisdiction.  Since a modification of department practice with respect to the provisions at issue (reasonable or not) is not required to

prevent discrimination, the plaintiff's reasonable modification claim must be dismissed for failure to state a claim on which relief can be granted.

The court also agrees with the defendant that allowing the plaintiff to maintain this claim would blur the lines between (1) a public entity's (required) undertaking to provide reasonable modifications that grant disabled individuals meaningful access to services and (2) its (not required) performance of services to the full satisfaction of a qualified individual. *See* Motion at 4. While the ADA and the Rehabilitation Act are intended to provide disabled individuals equal and meaningful access to a public entity's existing services, these statutes do not go so far as to provide a cause of action for every instance in which an individual finds the services provided by a public entity to be dissatisfactory. See, *e.g.*, *Wells v. Thaler*, 460 Fed. Appx. 303, 313 (5th Cir. 2012). If they did, it does not take much to imagine how the litigation floodgates would be opened.

The defendant's motion to dismiss the plaintiff's "first cause of action" is granted.

## D.  Second Cause of Action

The plaintiff contends that the city's maintenance of a policy, practice, or custom of non-enforcement of laws intended to protect and assist individuals with disabilities is discriminatory and violates Title II of the ADA and the Rehabilitation Act. Complaint ¶ 44.

To survive a motion to dismiss, the plaintiff must adequately plead the three *prima facie* elements of a cause of action for discrimination under the ADA and the Rehabilitation Act.  See *Johnson*, 116 F.3d at 1059-60; *Greer*, 752 F.Supp.2d at 753.

The first element, that the plaintiff be a "qualified individual with a disability," is undisputed.  *See generally* Motion and City of Burleson's Reply Brief Opposing Plaintiff's Response to Motion to Dismiss ("Reply") (docket entry 29).

In this case, the second element requires allegations that give rise to an inference that the plaintiff is "otherwise being discriminated against by the public entity."[2]  The regulations outline a variety of types of conduct that constitute discrimination, including "afford[ing] a qualified individual with a disability an opportunity to . . . benefit from the aid, benefit, or service that is not equal to that afforded others."  28 C.F.R. § 35.130(b)(1)(ii).  The plaintiff has alleged that the practice of Burleson's police department is to ignore disabled persons' requests for

---

[2]  The court's reasoning above shows why, for purposes of the second element of his *prima facie* case, the plaintiff's allegations cannot support an inference that he was "denied the benefits of . . . the services . . . of a public entity."  The effect of a conclusion that non-enforcement of two statutory provisions denied the plaintiff the benefits of the department's law enforcement services would be to substitute the court's notion of proper enforcement priorities for the department's.  The court has already explained why it refuses to endorse such a result.  In addition, the logic of the plaintiff's complaint and response brief undercuts any notion that the department's non-enforcement constitutes a "denial of services."  If it is indeed the policy or practice of the police not to enforce the two provisions at issue, *see* Complaint ¶¶ 44-45 and Response at 6-8 , then such enforcement is not part of the package of "services" the department offers and nothing has been"denied."  Such a policy or practice may, however, "otherwise discriminate" against the plaintiff.

- 16 -

enforcement of particular statutes aimed at the protection of those persons, and that the existence of such a practice affords him an opportunity to benefit from police services that is not equal to that afforded others.  Complaint ¶¶ 44-45, 49, and Response at 7.

The defendant avers that the holdings in *Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034 (8th Cir. 1998), *cert. denied*, 526 U.S. 1131 (1999), and *Valder v. City of Grand Forks*, 217 F.R.D. 491 (D. N.D. 2003), undercut this inference and dictate the dismissal of the plaintiff's general discrimination claim.  *See* Motion at 6-7, 12-13.  In each of these cases, the court ruled that there was no valid claim against public entities for refusing service to, or failing to enforce state statutes permitting entry of, individuals bringing service dogs into private businesses.  See *Pona*, 155 F.3d at 1036-37; *Valder*, 217 F.R.D. at 495-96.  However, neither of these cases is applicable.

In *Pona*, a St. Louis police officer refused to enforce a disabled woman's statutory right to bring a guide dog into a private business.  155 F.3d at 1037.  The plaintiff claimed that the St. Louis Police Department maintained a policy of non-enforcement that "denies a right secured to her [the plaintiff] by Title II of the ADA." *Id*.  The *Pona* court clearly (and carefully) refused to answer the question before this court.  *Id.* at 1036.  Its decision instead relied on the fact that the plaintiff could not show any connection between the defendants (the Board) and the police department policy at issue in the case.  *Id.*  The court also found that the legal protection the

plaintiff claimed she was being denied (Missouri Revised Statute § 209.150),

pursuant to department policy, was actually not even referenced in the department's

special order.  *Id.*  Thus the *Pona* court confined its reasoning to the very narrow facts

of that case.  It did not decide the question whether, as a matter of law, a police

department policy or practice of non-enforcement of specific statutes protecting

disabled persons might constitute "discrimination" under the ADA.

      *Valder* is inapposite because the question before the *Valder* court was whether

an individual officer's denial of enforcement could support a Title II discrimination

claim.  217 F.R.D. at 495.  Thus the *Valder* court also did not consider whether a

city's policy or practice of non-enforcement might support a Title II claim.

      The plaintiff's multiple statements that the Burleson police department has a

policy of non-enforcement are conclusory and cannot hurdle *Twombly*'s plausibility

threshold.  *See, e.g.*, Complaint ¶¶ 14, 20, 31, 44.  However, the factual allegations in

the complaint, including allegations that the department ignored the plaintiff's

requests for enforcement and that Wal-Mart employees stated they have received

similar responses to requests for enforcement, are enough to permit the court to infer

that the department has a practice of not enforcing the two statutory provisions in

question.  *See* Complaint ¶¶ 9, 11-13, 18-19.  The question, though, is whether the

existence of such a practice gives rise to a plausible inference that the plaintiff has

been provided an opportunity to benefit from law enforcement services that is unequal to that of others in the City of Burleson.  28 C.F.R. § 35.130(b)(1)(ii).

The court thinks that it does not.  First, non-enforcement of two statutory provisions tells the court nothing about the department's enforcement of other provisions.  The material in the complaint is plainly insufficient to lead to the conclusion that the plaintiff's receipt of law enforcement "services" is unequal to non-disabled citizens of Burleson.  Second, as the court has already made clear, even if some small measure of inequality could be inferred from the plaintiff's allegations, absent allegations of substantial neglect of the plaintiff's need for law enforcement, this court refuses to substitute its judgment for the department's regarding the allocation of law enforcement resources in Burleson.

To further buttress his general discrimination claim, the plaintiff relies on 28 C.F.R. § 35.130(b)(3)(ii), which prohibits a public entity from utilizing "criteria or methods of administration . . . [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities," citing as support *Independent Living Resource Center, Inc. v. City of Wichita, Kansas*, 2002 WL 539037, at *4 (D. Kan. Mar. 15, 2002) (denying the defendant's motion to dismiss the plaintiff's ADA discrimination claim).  *See* Response at 7-8.

Neither the cited regulation nor the Kansas case is any help to the plaintiff. The case is inapplicable, because the City of Wichita had implemented its own program, called the "Snap It" program, to aid enforcement of City parking ordinances.  *Independent Living,* 2002 WL 539037 at \*1.  The plaintiff's complaint points to no "program" of the City of Burleson that has been frustrated by its alleged practice of not enforcing certain Texas statutes.  State parking statutes and commercial code provisions cannot properly be labeled a "program" of Burleson, and the plaintiff identifies no other Burleson "program" analogous to Wichita's "Snap It" program.  For these reasons, neither the Kansas case nor the federal regulation applies to the conduct of the City of Burleson alleged in the complaint.

The plaintiff has therefore failed to allege facts leading to a plausible inference that would satisfy the second element of his *prima facie* discrimination case. Consequently, the defendant's motion to dismiss the plaintiff's second cause of action is granted.

## III.  <u>CONCLUSION</u>

For the reasons stated above, the defendant's motion to dismiss the plaintiff's second amended complaint is **GRANTED**.

The plaintiff is granted leave to amend his complaint to correct, if he can, the deficiencies noted.  Any such amended complaint must be filed and served by **July 31, 2013**.

- 20 -

**SO ORDERED**.

July 12, 2013.

_A. Joe Fish_

A. JOE FISH
**Senior United States District Judge**